UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KENNETH LEAR,                                    :
                                                 :
                              Plaintiff,          :
                                                 :
           -against-                             :
                                                 :
ROYAL CARIBBEAN CRUISES LTD., d/b/a              :
ROYAL CARIBBEAN INTERNATIONAL,                   :
GREGORY BROWN, ROBERT KING, and                  :
GRISEL GARCIA RODRIGUEZ,                         :
                                                 :
                              Defendants.         :

-------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED:  4/7/2021                │
└─────────────────────────────────────┘
```

1:20-cv-4660-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Kenneth Lear, applied for a job as a singer on a cruise ship owned by Royal Caribbean Cruises Ltd. ("RCCL").  Mr. Lear got the gig, which was to begin months later, starting with rehearsals in Florida, before he shipped off to Alaska.  Following a series of telephone calls and emails between Defendants in Florida and Mr. Lear in New York City, RCCL sent Mr. Lear his "Welcome Aboard"—a contract containing the terms of his employment.  The contract expressly provided that before he could even begin rehearsals, or receive any pay, Mr. Lear had to pass a medical examination.  Mr. Lear failed the medical examination because of a pre-existing medical condition, and RCCL did not let him move forward with the position.

Mr. Lear brought this action as a result.  He claims that by not permitting him to work as a singer because of his failure to satisfy the health contingency in his contract, Defendants terminated him.  He claims that the termination was the result of discrimination against him because of his disability.  Mr. Lear has brought claims under the Americans with Disabilities Act, the New York Human Rights Law, and the New York City Human Rights Law.

Defendants have moved to dismiss the action against them for lack of personal jurisdiction or, in the alternative, to transfer the action to the Southern District of Florida.  Because Defendants

did not project themselves into New York, and Mr. Lear never worked in New York, the Court lacks personal jurisdiction over Defendants.  But the transfer of this case to the Southern District of Florida serves the interests of justice.  Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is therefore GRANTED IN PART AND DENIED IN PART and their motion to transfer venue is GRANTED.

## I.   BACKGROUND[1]

Royal Caribbean Cruise Ltd. ("RCCL") operates commercial cruise ships across the world. Am. Compl. ¶¶ 12–13, Dkt. No. 17.  The company is incorporated in Liberia, but its principal place of business is in the State of Florida.  *Id.*  RCCL does not have any facilities, offices, telephone listings, mailing addresses, or bank accounts in the State of New York.  Decl. Yamilet Hurtado, Esq. Supp. Defs' Mot. to Dismiss ("Hurtado Decl.") ¶¶ 2–5, 8, Dkt. No. 20-2.  The company does not own or rent any property in New York.  *Id.* ¶¶ 6–7.  Nor does it design, manufacture, or sell any goods in New York.  *Id.* ¶¶ 9–11.  The company had six employees who worked remotely from their homes in New York as of September 15, 2020.  *Id.* ¶ 12.

Plaintiff resides in New York County.  Am. Compl. ¶ 11.  In response to an online advertisement placed by RCCL, Plaintiff applied for a position as a singer on one of RCCL's cruise ships using the company's website.  Decl. Gregory Brown Supp. Defs' Mot. to Dismiss ("Brown Decl.") ¶ 3, Dkt. No. 20-4; Decl. Robert Kling Supp. Defs' Mot. to Dismiss ("Kling Decl.") ¶ 3, Dkt. No. 20-3.  In or around March 2018, Gregory Brown, then a casting assistant for RCCL, called Plaintiff to offer him a position as a singer on a cruise ship operated by RCCL, the Radiance of the

---

[1] These facts are drawn from Plaintiff's amended complaint, Dkt. No. 17, and the declarations of Yamilet Hurtado, Robert Kling, Gregory Brown, and Grisel Garcia Rodriguez in support of Defendants' motion to dismiss, Dkt. Nos. 20-2—20-5.  None of the facts cited here from the declarations accompanying Defendants' motion are contradicted by Plaintiff's factual allegations or otherwise disputed by Plaintiff.

Seas (the "Ship").  Am. Compl. ¶¶ 14, 21.  During that conversation, Plaintiff told Brown that he

was HIV positive.  *Id.* ¶ 22.  Brown responded, "I don't anticipate this will be an issue."  *Id.*

The terms of Plaintiff's anticipated employment were outlined in an offer letter, Hurtado

Decl. Ex. A, and a contract for Plaintiff's employment, Hurtado Decl. Ex. B.  *See* Hurtado Decl.

¶¶ 13–14.  The offer letter is dated March 30, 2018.  Hurtado Decl. Ex. A, ECF p. 4.  The

"Employment" section of the offer letter states that Plaintiff "shall be hired to perform aboard [the

Ship] beginning on 08/24/2018, ('Commencement Date') and with an expected ending on

05/17/2019 ('End Date')."  *Id.*

The "Welcome Aboard"—RCCL's description of Plaintiff's contract for employment—is

dated March 30, 2018, and provides more detail regarding the expected dates and terms of Plaintiff's

employment.  Hurtado Decl. Ex. B, ECF p. 7.  The introductory sentence states "Enclosed please

find our contract for your employment with [RCCL] as an Entertainer on board our vessel, the

RADIANCE OF THE SEAS beginning 8/24/2018 through 5/17/2019."  Hurtado Decl. Ex. A.

The contract provided for a rehearsal period prior to Plaintiff's employment on board the vessel.

Plaintiff was scheduled to participate in rehearsals from July 7, 2018 through August 23, 2018, which

were to be held at the Royal Caribbean Productions Studios, located in North Miami, Florida.

Hurtado Decl. Ex. B.  Following the rehearsals, Plaintiff was to fly to Alaska to board the Ship,

where he was to perform for a nine-month period.  Brown Decl. ¶ 9; Kling Decl. ¶ 11.

The contract for Plaintiff's employment provided for no compensation for Plaintiff of any

kind prior to the rehearsal period, which was scheduled to begin on July 7.  During the rehearsal

period, he was to receive a $600 a week "living allowance" "as an expense reimbursement for food

during your attendance at rehearsal."  Hurtado Decl. Ex. B, ECF p. 7.  The company also was to pay

him a travel allowance.  Payments during the rehearsal period were not described as salary for

employment.  Under the employment contract, Plaintiff was not entitled to receive his full salary

until August 24, 2018.  *Id.*, ECF p. 9 ("You will begin on full salary per your contract on 8/24/2018.").

Plaintiff's employment was expressly conditioned, however, upon Plaintiff taking and passing a medical examination before the start of his employment.  The "Medical Examination" section of the offer letter reads:

> Your employment is expressly conditioned upon your taking and passing a medical examination prior to travelling to rehearsals and/or ship assignment.  You will be responsible for payment directly to the medical facility for services rendered as well as necessary subsequent transportation expenses or additional exams required to pass your medical.  Please see the "Welcome Aboard" under "Medical" for a more complete explanation of the required the medical examinations.

Hurtado Decl. Ex. A, ECF p. 5.  The "Medical" section in the employment contract states, among other things, that employees "are required to possess a valid medical certificate stating that you are fit for duty . . . while under contract with [RCCL].  All employees are responsible for arriving to their rehearsals and/or ship assignment with valid medical certificates."  Hurtado Decl. Ex. B, ECF p. 9.

Grisel Garcia Rodriguez, a nurse specialist at RCCL, was responsible for communicating with Plaintiff regarding his pre-employment medical testing.  Am Compl. ¶¶ 17, 24–25; Decl. Grisel Garcia Rodriguez Supp. Defs' Mot. to Dismiss ("Rodriguez Decl.") ¶ 3, Dkt. No. 20-5.  Around April 25, 2018, Rodriguez told Plaintiff about the minimum medical guidelines for RCCL, about which Plaintiff was allegedly concerned due to his HIV-positive status.  Am Compl. ¶ 25.  In or around May 2018, Plaintiff had the required blood work performed in New York City at Mount Sinai Medical Center and reported the results to Rodriguez.  *Id.* ¶¶ 26–28.  On or about May 31, 2018, Rodriguez informed Plaintiff that his CD4 count and viral load did "not meet the guidelines" to work for RCCL and that, as a result, Plaintiff would "not be able to move forward with the medical clearance process."  *Id.* ¶ 29.

Around June 1, 2018, Plaintiff updated Brown about his failure to meet the medical requirement.  *Id.* ¶ 31.  Robert Kling, a casting director for RCCL who oversaw casting assistants,

including Brown, was included on all communications between Plaintiff and Brown. *Id.* ¶ 16; Kling Decl. ¶ 4. Plaintiff was informed that he did not meet the medical requirements for the position more than a month before rehearsals were scheduled to begin in Miami; and nearly three months before August 24, 2018, the date that the Welcome Aboard stated was the date on which Plaintiff's "employment with [RCCL] as an Entertainer on board our vessel, the <u>RADIANCE OF THE SEAS</u>" was to begin. Hurtado Decl. Ex. B, ECF p. 9. Pursuant to the terms of the contract for employment, Plaintiff was not entitled to payment of any amount through the date on which his services were declined.

Brown, Kling, and Rodriguez (collectively, the "Individual Defendants") have been employees of RCCL and Florida residents at all relevant times. Am Compl. ¶¶ 14–15, 17; Brown Decl. ¶¶ 1–2; Kling Decl. ¶¶ 1–2; Rodriguez Decl. ¶¶ 1–2. All of them allegedly held supervisory authority over and the power to hire and fire Plaintiff. Am. Compl. ¶¶ 14–15, 17. Defendants and their agents never traveled to New York to meet with Plaintiff, and all communications between Plaintiff and Defendants were conducted via telephone and email. Brown Decl. ¶¶ 4–6; Kling Decl. ¶¶ 5–8; Rodriguez Decl. ¶¶ 4–7.

Plaintiff claims that Defendants' decision not to proceed with his employment after he failed the company's medical exam was a termination, that the termination was discriminatory and retaliatory in nature, and that it has resulted in emotional distress, physical ailments, and financial losses. Am. Compl. ¶¶ 32–38. Plaintiff alleges that the Individual Defendants, as well as RCCL (the "Corporate Defendant"), engaged in unlawful employment practices. *Id.* ¶¶ 42–86.

Plaintiff received a Right to Sue Letter from the EEOC on March 19, 2020. *Id.* ¶ 7. He filed the initial complaint on June 17, 2020. Dkt. No. 1. Defendants filed a motion to dismiss on October 23, 2020. Dkt. No. 16. That motion was dismissed as moot after Plaintiff amended his complaint on November 6, 2020. Dkt. No. 17.

Defendants then filed their second motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of Florida on November 23, 2020. Defs.' Br. Supp. Mot. to Dismiss ("Mot."), Dkt. No. 20-1. Plaintiff opposed, Mem. Law & Affirm'n Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Opp'n"), Dkt. No. 22, and Defendants replied, Defs.' Reply Br. Further Supp. Mot. to Dismiss ("Reply"), Dkt. No. 23.

## II.   LEGAL STANDARD

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003) (per curiam)). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At the pleading stage—and before discovery—a plaintiff need make only a prima facie showing that jurisdiction exists. *See id.* at 84–85; *see also Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). If a court considers only pleadings and affidavits, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). The allegations in the complaint must be taken "as true 'to the extent they are uncontroverted' by the defendant's affidavits, 'which the district court may also consider.'" *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d

330, 341 (S.D.N.Y. 2020) (quoting *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019) (citing in turn, *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012))).  But if the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted).  Courts will not, however, "draw argumentative inferences in plaintiff's favor . . . [or] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (international quotation marks and citation omitted).

District courts "resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). "First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws . . . .  Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Id.*  "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Id.*  Courts "may assert general jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which the suit is brought 'are so constant and pervasive so as to render it essentially at home in the forum State.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the

underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The New York State long-arm statute provides for general jurisdiction under Section 301 of the New York Civil Practice Law and Rules (the "N.Y. C.P.L.R."). *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). Of course, the exercise of general jurisdiction must still comport with federal due process requirements. *See Bank Brussels Lambert*, 171 F.3d at 784. In addition to general jurisdiction, "[t]he New York long arm statute authorizes personal jurisdiction over non-domiciliaries under [Section 302(a)]." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (citing N.Y. C.P.L.R. § 302(a)).

## III.   DISCUSSION

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff has not met his burden to establish that the Court has jurisdiction over Defendants under New York's long-arm statute. Defendants argue that none of the four statutory bases for personal jurisdiction under Section 302(a) of the N.Y. C.P.L.R. are applicable here. *See* Mot. at 4–11. In response, Plaintiff argues that the Court has personal jurisdiction over Defendants under Sections 301, 302(a)(1), and 302(a)(3). *See* Opp'n at 5–9. The Court considers each of the statutory bases for personal jurisdiction discussed in the parties' briefing and concludes that none confer the jurisdiction over Defendants.[2]

### 1.   N.Y. C.P.L.R. Section 301

There is no basis for the Court to exercise general jurisdiction over Defendants. Section 301 of the N.Y. C.P.L.R. "allows courts in New York to exercise general personal jurisdiction over

---

[2] Of the four bases for personal jurisdiction provided for under Section 302(a)(1)–(4) respectively, Plaintiff and Defendants only dispute whether the Court has jurisdiction under subsections (1) and (3). The Court will therefore only briefly discuss subsections (2) and (4).

individuals who are 'domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . 'do[] business' in [New York].'" *Delgado-Perez v. City of New York*, No. 17-CV-01194 (LTS) (BCM), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018) (quoting *Pinto-Thomaz v. Cusi*, No. 15-CV-1993 (PKC), 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015)).  To exercise general personal jurisdiction over a foreign corporation under Section 301, the defendant must be "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285 (1964)); *see also TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012) ("Under CPLR § 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a 'continuous and systematic course of doing business in New York.'" (citations omitted)).  "Occasional or casual business in New York does not confer general jurisdiction in New York such that a foreign corporation may be sued in New York on causes of action that are wholly unrelated to its activities in New York." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013) (citing *Ball*, 902 F.2d at 198).  "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi*, No. 7:16-CV6916 (NSR), 2017 WL 4947122, at *3 (S.D.N.Y. 2017) (quoting *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)).  In such cases, the individual defendant still "must be 'engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Patel*, 497 F. Supp. at 425 (quoting *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547–48 (S.D.N.Y. 2001).

The Court cannot exercise general jurisdiction over RCCL.  Nothing in Plaintiff's factual allegations supports a finding of RCCL's "presence" in New York.  RCCL is a foreign corporation

headquartered in Florida. Am Compl. ¶¶ 12–13. It does not have any assets in New York or sell any goods here. Hurtado Decl. ¶¶ 2–11. The company had only six employees in New York as of September 15, 2020, and they worked remotely from their homes. *Id.* ¶ 12. Indeed, Plaintiff's complaint alleges no facts regarding RCCL's business contacts with New York other than those related to Plaintiff's prospective employment. Those contacts were occasional at best for an out-of-state corporation and were by no means "continuous and systematic." *See McGowan v. Smith*, 52 N.Y.2d at 272.

As with the Corporate Defendant, the Court cannot exercise general jurisdiction over the Individual Defendants. None of the Individual Defendants are domiciled in New York. None of them have been present or engaged in a "continuous and systematic" course of doing business in New York. Because Plaintiff does not dispute that the Individual Defendants are all Florida residents and have never entered New York to meet with him regarding his employment with RCCL, there is no basis for the Court to conclude that it has general personal jurisdiction over them.

## 2. N.Y. C.P.L.R. Section 302(a)(1)

The Court does not have jurisdiction over Defendants under Section 302(a)(1) of the N.Y. C.P.L.R. Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan*, 52 N.Y.2d at 273).

"A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and

protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal

quotation marks and citations omitted).  "The New York Court of Appeals has explained that 'the

overriding criterion necessary to establish a transaction of business is some act by which the

defendant purposefully avails itself of the privilege of conducting activities within New York,'

thereby 'invoking the benefits and protections of its laws.'" *Licci ex rel. Licci v. Lebanese Canadian

Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted).  "Not all purposeful activity, however,

constitutes a 'transaction of business within the meaning of [N.Y. C.P.L.R. § 302(a)(1)].'" *Id.* at 62

(alteration in original) (citation omitted).

> Purposeful activities are volitional acts by which the non-domiciliary "avails itself of
> the privilege of conducting activities within the forum State, thus invoking the benefits
> and protections of its laws" . . . .  More than limited contacts are required for
> purposeful activities sufficient to establish that the non-domiciliary transacted business
> in New York.

*Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014) (internal citations omitted).

"The lack of an in-state physical presence is not dispositive of the question whether a non-

domiciliary is transacting business in New York." *Id.*  The exercise of long-arm jurisdiction under

N.Y. C.P.L.R. § 302(a)(1) can be warranted when an out of state actor projects itself into New York

to conduct business transactions by electronic and telephonic means.  *See id.*

> Regardless of whether by bricks and mortar structures, by conduct of individual actors,
> or by technological methods that permit business transactions and communications
> without the physical crossing of borders, a non-domiciliary transacts business when
> "on his or her own initiative . . . the non-domiciliary projects himself or herself" into
> this state to engage in a "sustained and substantial transaction of business."  Thus,
> where the non-domiciliary seeks out and initiates contact with New York, solicits
> business in New York, and establishes a continuing relationship, a non-domiciliary can
> be said to transact business within the meaning of CPLR 302(a)(1).

*Id.* at 376–77 (internal quotations and brackets omitted).

Determining whether a non-domiciliary is transacting business in New York is a fact-based

determination.  *Id.* at 376.

> Several factors should be considered in determining whether an out-of-state defendant transacts business in New York under Section 302(a)(1), including:
> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; (iv) whether the contract requires [parties to that contract] to send notices and payments to the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.* 98 F.3d 25, 29 (2d Cir. 1996) (internal quotation marks omitted)). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id.* at 23. "[T]he ultimate determination is based on the totality of the circumstances." *Id.* (alteration in original) (citation omitted).

"If the defendant is transacting business in New York, the second half of the Section 302(a)(1) inquiry asks whether the cause of action 'aris[es] from' that business transaction or transactions." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 249 (2d Cir. 2007) (alteration in original) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 818 N.Y.S.2d 164, 167 (2006)). "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103). "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated." *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Best Van Lines*, 490 F.3d at 249 (quoting *Sole Resort*, 450 F.3d at 103). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Sanderson v. Horse*

*Cave Theatre 76*, 881 F. Supp. 2d 493, 504 (S.D.N.Y. 2012) (quoting *Deutsche Bank*, 818 N.Y.S.2d at 166–67).

The Court does not have jurisdiction over RCCL under Section 302(a)(1). An evaluation of the facts of this case leads to the conclusion that Defendants did not "transact business" in New York. RCCL hired a New York resident for employment outside of the State, after he responded to an online job announcement. The electronic communications by the non-domiciliary Defendants with Plaintiff in the course of hiring him and then entering into a contract for his future work in Florida and Alaska did not rise to the level of transacting business here.

First, there was no "ongoing contractual relationship" between Plaintiff and RCCL. RCCL hired Plaintiff for a job that would start several months later. At the time that RCCL decided not to move forward with his employment because of the failed medical test, Plaintiff had not yet done any work for RCCL. According to his contract, he was not entitled to any kind of compensation until he began rehearsals in July. RCCL decided not to move forward with Plaintiff's employment in May. The length of the parties' relationship overall was very short. And the length of time between the date on which he entered into the contract for employment, and the decision that he had not met its medical contingency, was just over two months. "[D]istrict courts within this Circuit have held that a single short-term contract is not enough to constitute a 'ongoing contractual relationship' for the purposes of personal jurisdiction." *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 584–85 (S.D.N.Y. 2016) (alteration in original) (quoting *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 317 (S.D.N.Y. 2007)). The brief life of the parties' contractual relationship weighs against finding personal jurisdiction over RCCL here.[3]

---

[3] For context, even contractual relationships of the anticipated duration of Plaintiff's employment—only nine months— have been found to be too short to be "ongoing" for purposes of the N.Y. C.P.L.R. *See Sandoval*, 507 F. Supp. 2d at 317 (finding no ongoing contractual relationship existed between a New York-based corporation and a foreign defendant to install an irrigation system, the physical labor for which was performed between December 2003 and October 2004); *c.f. Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 Civ. 1616 (RJH), 2011 WL 5838697, at *10 (S.D.N.Y. Nov. 21, 2011)

Turning to the second factor—whether the contract was negotiated or executed in New York—the fact that the parties' employment contract was negotiated and executed solely via telephone and email and that no representatives of RCCL traveled to New York to meet with Plaintiff weighs against a finding of personal jurisdiction over RCCL. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005) (alteration in original) (quoting *Worldwide Futgol Assocs., Inc. v. Event Ent.*, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997)); *see Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 Fed. App'x 479 (2d Cir. 2008) (summary order) (finding no personal jurisdiction where negotiations of the contract were conducted through telephone calls and e-mails from Illinois to New York); *Wego Chem. & Min. Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 384–85 (E.D.N.Y. 2013) (concluding that allegations that the defendant made telephone calls and sent emails directed to plaintiff in New York were insufficient to support jurisdiction); *United Comput. Cap. Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002) ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding the transaction of business in New York."). This is not a rule, however. As noted previously, if an out-of-state defendant projects itself into New York to conduct business by electronic means, it can be found to be subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) where it "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Paterno*, 24 N.Y.3d at 376.

---

("[C]ourts in this district have found personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years.").

RCCL did not seek out and initiate contact with New York.  RCCL placed an advertisement on the internet for a singer.  Kling Decl. ¶ 3.  No allegation or evidence suggests that the advertisement was directed at New York, rather than the world with access to the web.  Plaintiff responded to the advertisement by submitting a casting profile to the company's website.  Brown Decl. ¶ 3.  The position for which RCCL was seeking to employ Plaintiff was located somewhere off the shores of Alaska, with rehearsals in Florida.  Again, nothing suggests that RCCL anticipated conducting business in New York of any type.  It had not begun to pay Plaintiff while he was in New York, and under the employment contract, Plaintiff was not going to receive any payment until sometime after his arrival in Florida.  As described previously, the relationship between RCCL and Plaintiff, such as it was, was very brief.  And, again, all information presented to the Court supports the conclusion that the employment relationship between Plaintiff and RCCL was to be conducted outside of New York—in Florida or Alaska.  Under these circumstances, the Court cannot conclude that RCCL purposefully availed itself of the privilege of conducting activities within New York.  It offered a job to a New Yorker—that by itself was not enough.

Plaintiff cites to *Fischbarg v. Doucet* to argue that the Court should find that Defendants' "sustained communications into the State of New York" constitute the "transaction of business" here.  Opp'n at 7 (citing 9 N.Y.3d 375, 384–85 (2007).  But the facts of this case are very different from those in *Fischbarg*.  In *Fischbarg*, the California defendants placed a telephone call to a particular lawyer in New York—Mr. Fischbarg, a member of the New York bar—seeking to retain him as their counsel.  9 N.Y.3d at 377.  They then established a continuing attorney-client relationship with him over the course of nine months, throughout which they frequently exchanged phone calls and emails.  *Id.* at 378.  Here, RCCL did not specifically reach out to New York to contact Plaintiff; they posted a broadly available advertisement on the internet; Plaintiff contacted them.  The defendants in *Fischbarg* were hiring a New York-qualified lawyer who would work for them from New York.

Nothing in the record here suggests that Plaintiff's connections to New York were factors in the hiring decision.  And RCCL provided in the contract that all work by Plaintiff would be conducted outside of the state.  Moreover, the handful of telephone calls and emails between Plaintiff and Defendants alleged in the amended complaint were not "sustained."  The facts of this case are far removed from those in *Fischbarg*.

Plaintiff also points to *International Health Exchange, Inc., v. Global Health Exchange, LLC*, in which the court found that a substantial portion of the allegedly discriminatory communications and work assignments sent to the plaintiff's home office in New York "formed the substantive basis" for the plaintiff's claims against the defendants, establishing jurisdiction over them.  Opp'n at 8 (citing 470 F. Supp. 2d 345, 358–59 (S.D.N.Y. 2007).  But in that case, the plaintiff worked for the foreign corporation out of an office in her home in New York and received communications and assignments through telephone, fax, and email during the course of the employment.  *International Health Exchange*, 470 F. Supp. 2d at 358–59.  Plaintiff had not yet started working under the contract with RCCL; and his job was never expected to be performed in New York.  The pre-employment communications via telephone and email between RCCL and Plaintiff are not sufficient to demonstrate purposeful transaction of business in New York by RCCL.

In addition to the place of negotiations and execution of the contract, courts have frequently looked to whether the contract was to be performed in New York as a significant factor in evaluating the "transaction of business" requirement.  *See, e.g.*, *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir. 1975) (holding that the fact that the contract was to be performed in another state was "of great[] significance"); *Navaera Sci., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009) (finding that "the agreement was performed outside of New York is of 'great[] significance'" (quoting *id.*)); *Mortg. Funding*, 379 F. Supp. 2d at 286 (explicitly adding "whether the contract is to be performed in New York" to the list of factors to be considered in determining

whether a party has transacted business under Section 302(a)(1)). Again, Plaintiff was to receive training in Florida and then fly to Alaska to sing on board the cruise ship. The fact that the contract was to be performed entirely outside New York weighs heavily against the exercise of personal jurisdiction over RCCL.

Finally, the copy of the employment contract provided by Defendants sheds some light on the third and fourth factors—the existence of New York choice-of-law clause and notices and payments to New York. According to the "Onboard Payment" section of the contract, Plaintiff was asked to provide his bank account in order for RCCL to set up direct deposit. Hurtado Decl. Ex. B. But there is no evidence of any payment made to a New York bank. There is no New York choice of law clause in the contract. *See id.*

In sum, an evaluation of the "totality of circumstances" militates against jurisdiction over RCCL: RCCL did not project itself into New York in particular. Plaintiff pushed his application out from New York. Plaintiff and RCCL did not have an ongoing contractual relationship; they remotely negotiated and entered into an employment contract, which was to be performed outside New York; and the contract contains no New York choice of law provision. The fact that Plaintiff's medical evaluation took place in New York does not suffice to provide the Court with jurisdiction over Defendants either, because "[t]he appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary defendant[s] did in New York and not on what plaintiff[] did." *Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995)). On this record, RCCL cannot be found to have been "purposefully availing itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Naughton*, 806 F.2d at 365.

Because RCCL did not "transact business" within New York, the Court need not address the second requirement, namely that Plaintiff's claim must arise from the business activity. Accordingly, the Court does not have jurisdiction over RCCL under Section 302(a)(1).

For the same reasons with the Corporate Defendant, the Individual Defendants did not "transact business" in New York. Therefore, the Court does not have jurisdiction over the Individual Defendants under Section 302(a)(1).

### 3.    N.Y. C.P.L.R. Section 302(a)(2)

The Court does not have jurisdiction over Defendants under Section 302(a)(2) of the N.Y. C.P.L.R. Section 302(a)(2) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2). "[P]hysical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)[,]" and this provision "reaches only tortious acts performed by a defendant who was *physically present* in New York when he performed the wrongful act." *Bank Brussels Lambert*, 171 F.3d at 790 (emphasis added) (citations omitted).

Physical presence of Defendants in New York at the time the tortious act occurred is necessary to establish jurisdiction under Section 302(a)(2). Neither the Corporate Defendant nor the Individual Defendants were "present" in New York when they engaged in the allegedly discriminatory employment practice. Therefore, the Court agrees with Defendants, and Plaintiff does not dispute in his opposition brief, that Section 302(a)(2) does not confer jurisdiction over Defendants.

### 4.    N.Y. C.P.L.R. Section 302(a)(3)

The Court does not have jurisdiction over Defendants under Section 302(a)(3) of the N.Y. C.P.L.R., the last statutory provision upon which Plaintiff relies. Section 302(a)(3) provides the following:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3). This provision "requires commission of a tortious act outside New York State which causes injury within the State." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 448 (S.D.N.Y. 2000). "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Whitaker*, 261 F.3d at 209 (quoting *Bank Brussels Lambert*, 171 F.3d at 791). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir. 1990)).

The Court does not have jurisdiction over RCCL under Section 302(a)(3), because he original event that caused Plaintiff's alleged injury did not occur in New York. "An injury . . . does not occur within the state simply because the plaintiff is a resident." *Mareno*, 910 F.2d at 1046. In *Mareno*, the plaintiff, who lived in New York, sued his New Jersey employer for wrongful discharge. The Second Circuit found that the location of the original event that caused the injury was New Jersey. *Id.* It rejected the plaintiff's argument that "he was injured within the state by virtue of the fact that he has suffered financial loss in New York." *Id.* Thus, a plaintiff's "mere residence in New York is insufficient to establish personal jurisdiction over a nondomiciliary defendant under § 302(a)(3)." *DiStefano*, 286 F.3d at 85. However, "when a person is employed in New York (or performs a substantial part of the duties of his or her employment in New York), his or her removal from that employment (or from those duties) is a New York event that constitutes 'the first effect of the tort' of discharging the employee." *Id.* (citation omitted).

19

The original event that caused Plaintiff's injury did not occur in New York because he was not employed to work in New York and did not work in New York.  Plaintiff argues that because he "was hired, fired, and discriminated against in New York," "New York constitutes the situs-of-injury for purposes of § 302(a)(3)."  Opp'n at 9.  Plaintiff had not yet begun working for RCCL at the time that the company decided not to continue his engagement; his participation in rehearsals and employment as a singer was expressly contingent upon his passage of the pre-employment medical examination.  Plaintiff's work was expected to be completed in Florida and somewhere on a boat off the shores of Alaska, not New York.  Unlike the facts in *DiStefano*, Plaintiff never worked in New York, and he was not expected to perform any portion of his work here.  His presence in New York at the time of his hiring and RCCL's decision not to proceed with his employment—together with the fact that he felt the consequences of that decision in New York—do not make New York the place of the original event that caused his injury.  Because the situs of injury was not New York, the Court cannot exercise jurisdiction over RCCL under Section 302(a)(3).

The same logic applies to the Individual Defendants, all of whom were based in Florida at all relevant times.  Because New York was not the "situs of injury," or where the "original event which caused the injury" occurred, the Court does not have jurisdiction over the Individual Defendants under Section 302(a)(3).

### 5.    N.Y. C.P.L.R. Section 302(a)(4)

Finally, the Court finds that it does not have jurisdiction over Defendants under Section 302(a)(4) of the N.Y. C.P.L.R.  Section 302(a)(4) provides for jurisdiction when a non-domiciliary "in person or through an agent . . . owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(4).  Under this provision of the statute, "it is not enough for the property to be related in some way to the parties' dispute; the plaintiff's 'cause of action [must] arise[] out of the fact of ownership, use or possession of New York realty.'"  *Elsevier, Inc. v. Grossman*,

77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (alterations in original) (quoting *Tebedo v. Nye*, 256 N.Y.S.2d 235, 236 (Sup. Ct. 1965)).  "[Section 302(a)(4)] requires a relationship between the property and the cause of action sued upon."  *Lancaster v. Colonial Motor Freight Line, Inc.*, 581 N.Y.S.2d 283, 288 (1st Dep't 1992).

Because Plaintiff has not alleged any ownership, use, or possession of real property in New York that serves as the basis for his cause of action against Defendants, Section 302(a)(4) does not apply.  In any event, RCCL does not own, use, or possess any property in New York—Plaintiff does not contest this fact.  *See* Hurtado Decl. ¶¶ 6–7.  Understandably, Plaintiff does not oppose this aspect of Defendants' motion.  Section 302(a)(4) does not confer jurisdiction over Defendants.

### 6.   Federal Due Process Requirements

Because the Court concludes that there is no basis for personal jurisdiction over Defendants under New York's long-arm statute, the inquiry ends here, and the Court need not discuss the constitutional due process requirements.

### B.   Request for Jurisdictional Discovery

Plaintiff's request for jurisdictional discovery is denied.  "District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so, to what extent."  *In re MS Angeln GmbH & Co. KG*, No. 10 Civ. 4820 (GBD), 2012 WL 1080300, at *7 (S.D.N.Y. Mar. 29, 2012) (citing *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009) and *Lehigh Valley*, 527 F.2d at 93).  In light of that discretion, the Second Circuit has repeatedly affirmed denials of jurisdictional discovery where the plaintiffs failed to demonstrate a prima facie case for personal jurisdiction over the defendants.  *See, e.g.*, *Best Van Lines*, 490 F.3d at 255 (concluding that district court was "well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the Jazinis did not establish a prima facie case that the

district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue.").

At the same time,

> [i]t is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.

*Ikeda v. J. Sisters 57, Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015) (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing in turn, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003))); *see Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (2004) ("If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction.").  "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted).

Courts often consider the scope of the proposed requests and whether the particular facts the party seeks to adduce could aid in its jurisdictional inquiry. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009).  This is because a "plaintiff cannot put [a] defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks that it can probably show significant contact with the state of New York if discovery were to proceed." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 565 (S.D.N.Y. 1997).

Thus, a district court can deny requests for jurisdictional discovery where the request amounts to "a fishing expedition unlikely to uncover any material facts that would alter [its] conclusions" regarding personal jurisdiction. *Duff & Phelps Sec., LLC v. Wisniewski*, No. 16 Civ. 7226 (VEC), 2017 WL 2880849, at *5 (S.D.N.Y. July 5, 2017); *see SPV Osus Ltd. v. UniCredit Bank Austria*,

No. 18 Civ. 3497 (AJN), 2019 WL 1438163, at *12 (S.D.N.Y. Mar. 30, 2019) (refusing to allow jurisdictional discovery where "[p]laintiff does not point to any particular facts that it would hope to discover that would permit [the c]ourt to exercise jurisdiction"); *M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 (CM), 2010 WL 4159476, at *9 (S.D.N.Y. Oct. 7, 2010).

The Court denies Plaintiff's request for jurisdictional discovery. Plaintiff argues that he has made a showing that he is at least entitled to jurisdictional discovery as to each of the Defendants. Opp'n at 11. Defendants oppose Plaintiff's request for jurisdictional discovery, asserting that Plaintiff has not made out a prima facie case for jurisdiction and does not explain what information he hopes to obtain to further establish his jurisdictional allegations. Reply at 11–12.

Plaintiff's attempt to justify his request for jurisdictional discovery is unavailing. Plaintiff bases his request on nothing more than the bare assertion that "nearly all of the information necessary to establish jurisdiction is squarely in the hands of Defendants." Opp'n at 12. By citing a string of cases where jurisdictional discovery was granted, Plaintiff merely asserts, without presenting any substantive rationale, that "if any doubts remain, the Court should reserve judgment on Defendants' motion until Plaintiff can take jurisdictional discovery." *Id.* Plaintiff is aware of the full range of Defendants' communications with him. Plaintiff offers no guidance whatsoever on what "particular facts" he hopes to develop that would establish the Court's jurisdiction over Defendants.

Because Plaintiff has failed to make a prima facie showing of personal jurisdiction over Defendants, and Plaintiff has also failed to identify any particular information that he would seek were the Court to grant him the opportunity to conduct jurisdictional discovery, the Court declines to grant Plaintiff's request for jurisdictional discovery.

### C.   Motion to Transfer Venue

Having concluded that the Court lacks personal jurisdiction over Defendants, the Court can either simply dismiss the action "or, in the interest of justice, order [its] transfer to another district

where jurisdiction and venue properly obtain." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005).  28 U.S.C. § 1406(a) provides the authority for the Court to transfer the case.  *See SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 179 n.9 (2d. Cir. 2000).  Section 1406(a) provides the following:  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  This provision is "in accord with the general purpose . . . of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits."  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).  "Congress, by the enactment of [§ 1406(a)], recognized that 'the interest of justice' may require that the complaint not be dismissed but rather it be transferred in order that the plaintiff not be penalized by . . . [the] 'timing-consuming and justice-defeating technicalities.'"  *Id.* at 467 (citation omitted).  "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice."  *Daniel*, 428 F.3d at 435.

The Southern District of Florida has personal jurisdiction over all Defendants, and venue would be proper there.  The transfer of this case would be in the interests of justice for a number of reasons.  It will obviate the need for Plaintiff to refile the action in a proper jurisdiction, sparing him that time-consuming technicality.  All Defendants are located in the Southern District of Florida, and they requested that the case be transferred there in the event that it was not dismissed.  Therefore, the Court will order the transfer of this case to the Southern District of Florida.

## IV.   CONCLUSION

The Court does not have personal jurisdiction over Defendants.  Rather than dismissing the action, however, the Court is ordering its transfer to the Southern District of Florida, where all Defendants reside.  Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is

GRANTED IN PART AND DENIED IN PART and their motion to transfer this case to the Southern District of Florida is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 20 and to transfer this case to the Southern District of Florida without delay.

SO ORDERED.

Dated:  April 7, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge